REBECCA BROWN STURGILL, PLAINTIFF-APPELLEE V. GEORGE C. STURGILL, JR., DEFENDANT-APPELLANT, AND PIEDMONT AVIATION, INC., GARNISHEE

No. 8021DC413

(Filed 2 December 1980)

1. Divorce and Alimony § 21— alimony arrearage held by clerk — order of garnishment stricken — defendant not entitled to funds held by clerk

Where plaintiff obtained a judgment against defendant for arrearages in child support and alimony, plaintiff moved for an order of garnishment for the amount of the judgment, defendant's employer was served with a summons to garnishee, notice of levy in garnishment proceeding, and order of attachment, the employer paid the amount of the judgment into the clerk's office, the court entered an order garnishing defendant's salary, and the order of garnishment was subsequently stricken, defendant was not entitled to have the sum in the clerk's office refunded to him pursuant to G.S. 1-440.45, since defendant could not claim to have prevailed in the principal case, the order striking the garnishment order not resolving any action in defendant's favor; the order of attachment was not dissolved by the order striking garnishment; and defendant could not assert the lack of service upon him for the reason that he failed in his response to motion for garnishment and countermotion to raise the defense of lack of proper service.

2. Garnishment § 1; Divorce and Alimony § 21.4— judgment for alimony arrearage — garnishment of defendant's wages proper

The means used to obtain the $2438.42 necessary to satisfy plaintiff's judgment against defendant was garnishment where plaintiff held a personal judgment against defendant; defendant was in willful contempt for failure to pay

alimony as it came due; plaintiff filed a motion seeking an order of garnishment; defendant's employer was served with summons to garnishee, notice of levy in garnishment proceeding, and order of attachment; and pursuant thereto defendant's employer withheld from his net disposable income an amount sufficient to satisfy the garnishment lien and paid that sum into the court pending an order from the district court to disburse the funds to plaintiff. Furthermore, garnishment of the $2438.42 was permissible under the circumstances of this case, since the amount garnished was a debt already accrued to defendant's benefit and not future earnings, and since defendant was not entitled to the 60 day exemption of G.S. 1-362 of earnings "necessary for the use of a family supported wholly or partly by his labor," as defendant's bare allegation that his income was necessary to support his new family was insufficient to support his claim for the exemption.

3. **Assignments § 1; Divorce and Alimony § 21; Rules of Civil Procedure § 70—assignment of defendant's wages to secure future alimony payments —execution by judge improper**

Defendant's contention that the trial judge was without authority to execute an assignment of defendant's wages on the ground that the judge could direct the act to be done by someone else but could not do it himself was without merit; however, though defendant's history of willful and intentional nonpayment of alimony was sufficient to justify the judge's entry of an order to defendant to execute an assignment of wages to secure future alimony payments, the judge was without authority himself to execute such an assignment absent defendant's failure to comply with a judgment within the time specified.

APPEAL by defendant from *Keiger, Judge.* Order entered 19 December 1979 in District Court, FORSYTH County. Heard in the Court of Appeals 16 October 1980.

Plaintiff, Rebecca Sturgill, and defendant, George Sturgill, were divorced in 1971 under a consent decree which awarded alimony and child support to plaintiff. Although the amount of the alimony and child support has been subsequently modified by amendment, defendant's obligation remains in full force under the 1971 judgment.

Defendant moved to Virginia some time after entry of the judgment. Since that time plaintiff has had difficulty on several occasions with collecting the amounts due her. In a judgment and order of arrest entered 31 August 1979, defendant was found in arrears in his payments to plaintiff in the amount of $2,438.42 and was found in willful contempt of the court.

On 8 October 1979, plaintiff filed a motion to have the wages of defendant garnished for the full amount of the 31 August judgment. The motion was not verified nor was it served upon defendant. On 9 October, defendant Piedmont Aviation, Inc., defendant

Sturgill v. Sturgill

Sturgill's employer, was served with a summons to garnishee, notice of levy in garnishment proceeding, and order of attachment. Defendant Piedmont acknowledged its debt to defendant Sturgill and paid into court the full amount of the 31 August judgment. On 24 October 1979 an order was entered garnishing defendant's salary.

Defendant Sturgill filed a response to plaintiff's 8 October motion on 29 October 1979. In an order entered 1 November 1979, the order of 24 October was stricken, a hearing on the 8 October motion was scheduled, and plaintiff was ordered to return any moneys received under the stricken order to the clerk of court pending determination of the matter.

Prior to the hearing plaintiff filed numerous further motions, including motions seeking an assignment of wages to secure defendant's obligations to pay alimony and garnishment of defendant's wages for child support. Defendant answered these motions and counterclaimed for damages, attorney's fees, and punitive damages.

All motions were heard 14 December 1979. The trial judge found as facts: that defendant had deliberately set upon a course of action calculated to evade previous court orders; that defendant willfully failed to pay all alimony and child support payments; that defendant had the financial means to comply with the court's order; that plaintiff was in need of a continuing order of garnishment on defendant's wages to secure past, present, and future child support; and that, due to defendant's history of willful evasion of previous court orders, plaintiff was also in need of an assignment of wages and funds presently in the clerk's office for alimony payment.

The judge, pursuant to G.S. 50-16.7 and G.S. 1A-1, Rule 70, ordered the assignment of the $2,438.42 on deposit in the clerk's office to satisfy the judgment of 29 August 1979, and ordered an assignment of wages for past, present, and future alimony. In addition, pursuant to G.S. 110-136 the court ordered Piedmont to pay 20% of defendant's net earnings per pay period to the clerk to be applied to the child support arrears and thereafter to be applied to the continuing child support payments. Finally the court also ordered the defendant to pay the plaintiff's attorney's fees in the sum of $1,250.00.

Defendant appealed the 19 December 1979 order.

*Yokley and Teeter by D. Blake Yokley and Lynn P. Burleson for plaintiff appellee.*

*Morrow, Fraser and Reavis by Larry G. Reavis for defendant appellant.*

*Womble, Carlyle, Sandridge & Rice by Francis C. Clark for garnishee appellee.*

CLARK, Judge.

Since the defendant expressed acquiescence in the trial court's order with regard to the provision for garnishment for child support under G.S. 110-136, we need deal herein only with that portion of the order of 19 December 1979 which assigns the wages of defendant to the plaintiff in payment for his alimony obligation. The assignment of wages must be considered in two parts. First, we must consider whether the trial court's assignment of the $2,438.42 on deposit with the clerk was error. Second, we must consider whether the court's assignment of defendant's future wages is error.

[1]   With regard to the amount on deposit with the clerk, defendant argues that the sum should have been refunded to him when the 24 October order was stricken. Defendant cites in support of his argument G.S. 1-440.45 which states in part:

"If the defendant prevails in the principal action, or if the order of attachment is for any reason dissolved, dismissed or set aside, or if service is not had on the defendant as provided by § 1-440.7,

(1) The defendant shall be entitled to have delivered to him

. . . .

c. All attached property remaining in the officer's hands . . . ."

We believe defendant's reliance on G.S. 1-440.45 is misplaced for the reason that he meets none of the three conditions upon which return of attached property is conditioned.

First, defendant cannot claim to have prevailed in the principal case. The order of 1 November 1979 striking the order of 24

October 1979 did not *resolve* any action in defendant's favor. It merely allowed the court to consider defendant's countermotion (which was filed after the 24 October order) and provided for hearing on all motions prior to disbursal of the attached funds.

Second, the order of attachment was *not* dissolved. The order of attachment was dated 8 October 1979. The order of 1 November 1979 was clearly limited by its terms to the Order of 24 October 1979.

Third, the defendant may not assert the lack of service upon him for the reason that he failed in his response to motion for garnishment and countermotion to raise the defense of lack of proper service, although he did raise the defense of failure to state a claim upon which relief can be granted. These circumstances work a waiver of any objection based upon jurisdiction or service of process under G.S. 1A-1, Rule 12 (h) (1).

Defendant was not entitled to have the funds returned to him, since he failed to satisfy any of the statutory conditions placed upon the return. The attached funds were properly held pending a hearing on the motions of both parties, to be held on 19 December 1979.

At that hearing the trial judge elected to grant plaintiff relief in the form of an assignment of wages rather than a garnishment. Defendant argues strenuously that the judge was without authority to order garnishment, and that the assignment executed under Rule 70 was simply a means of granting garnishment indirectly to plaintiff when she was not entitled to it directly.

**[2]** As to the sum held on deposit by the clerk and disbursed to the plaintiff under the 19 December order, we hold that the action of the District Court, however denominated, was indeed a garnishment. A review of the record reveals: that plaintiff held a personal judgment against defendant in the amount of $2,438.42; that defendant was in willful contempt for failure to pay alimony as it came due; that on 8 October plaintiff filed a motion seeking an order of garnishment; that defendant's employer was served with a summons to garnishee, notice of levy in garnishment proceeding, and order of attachment; and that *pursuant thereto* defendant's employer withheld from his net disposable income an amount sufficient to satisfy the garnishment lien and paid that sum into the court pending an order from the District Court to disburse the funds to the plaintiff. Such an order was entered on 24 October 1979 although

later vacated by the court because it was entered before defendant's time for answering plaintiff's motion for garnishment had expired. Although the order of 19 December "assigns and directs" the clerk to pay to the plaintiff the $2,438.42, we believe the actual procedure followed to create the fund, as the record clearly discloses, was that of garnishment.

Having held that the means used to obtain for plaintiff the $2,438.42 necessary to satisfy her judgment was indeed garnishment as defendant alleges, we must next determine whether garnishment was permissible under the circumstances of this case. We hold that, as to the $2,438.42 disbursed to plaintiff under the 19 December order, garnishment was proper. G.S. 50-16.7(e) clearly states that: "[t]he remedies of attachment and garnishment, as provided in Article 35 of Chapter 1 of the General Statutes, shall be available in actions for alimony . . . ." Defendant cites *Elmwood v. Elmwood*, 295 N.C. 168, 244 S.E. 2d 668 (1978), and *Phillips v. Phillips*, 34 N.C. App. 612, 239 S.E. 2d 743 (1977), as authority for "the long standing rule against paying alimony directly by the use of deducting amounts from a person's salary (garnishment)." We have examined those cases and find that in *Elmwood*, our Supreme Court *approved* garnishment for the amounts due as alimony with the following limitations: (1) *future* earnings may not be garnished and (2) a defendant is entitled to a 60-day exemption if he can show that his "earnings are *necessary* for the use of a family supported wholly or partly by his labor." G.S. 1-362. We conclude then that the garnishment of the defendant's wages was improper only if it violated one of the above two limitations.

The amount withheld from defendant's October wages was a debt already accrued to defendant's benefit and therefore garnishable under the rationale of *Elmwood, supra.* The comptroller of Piedmont Airlines testified at the 19 December hearing. Although he stated, "At the time I received the order, I did not owe any monies to Mr. Sturgill," and later, "Mr. Sturgill had a check due on the 20th, and I would not pay him until the 20th," we believe that other statements make clear that the comptroller was confusing the date the debt for wages *accrued* to defendant with the date the debt would be paid. The comptroller testified that on the date he was served with the order compelling him to withhold funds from defendant, he "had a check forthcoming that I had already written . . . . The check I was to send him . . . was *for services that he had rendered*

*to the company on prior dates. He had earned monies* but they were not yet due and payable to him until the 20th." We hold that as long as the order of garnishment did not attach wages for services *yet to be rendered,* the District Court's action was within the first of the above limitations.

The exemption under G.S. 1-362 would exempt from garnishment the wages of a defendant earned in the sixty days next preceding the order where "it appears, by the debtor's affidavit or otherwise, that these earnings are necessary for the use of a family supported wholly or partly by his labor." Defendant's varified pleadings were admitted in the hearing as affidavits. In his pleadings defendant alleged, "that he and his new family ... are in need of the defendant's total income to maintain their welfare." We hold that the bare allegation by defendant that his income is necessary to support his new family is insufficient to support his claim for the exemption. We believe that defendant was required under G.S. 1-362 to state sufficient facts in his affidavit to allow the trial judge to determine that the exemption was necessary. We realize that if it appears to the court that the defendant's salary is necessary to support his second family, the court is *required,* however illogically, to grant the exemption [*Cf., Elmwood v. Elmwood,* 295 N.C. 168, 244 S.E. 2d 668 (1978) (suggesting that the legislature never contemplated "that the needs of a wage-earner's second family should be supplied at the expense of the legitimate claims of his first family," but granting the exemption anyway, *"it plainly appearing from the defendant's affidavit* that his pay was necessary to his second family)]; nonetheless, since it does not plainly appear from defendant Sturgill's affidavit *what* the needs of his present family are, the trial court had no basis upon which to grant the exemption.

Based on the foregoing analysis there appears to us no impediment to the garnishment of defendant's wages to satisfy the plaintiff's judgment against the defendant for $2,438.42. Amounts earned thereafter, however, were clearly prospective earnings at the time of service on Piedmont, and therefore not subject to garnishment. *Finance Co. v. Putnam,* 299 N.C. 555, 50 S.E. 2d 670 (1948). *See Elmwood, supra.* Only if the District Court's purported assignment of wages was in fact authorized may any amounts beyond the $2,438.42 be properly paid directly from the defendant's employer to the plaintiff.

The order of 19 December 1979 purports to assign "30% of the

Sturgill v. Sturgill

defendant's net earnings ... to plaintiff ... to be applied as follows: 15% of said net earnings ... to be credited as payment of future alimony as said payments become due each and every month ...; the remaining 15% ... shall be applied toward alimony arrears in the amount of $1,305.06 ... ." until the arrearage is paid. The District Court cites as authority for its assignment of defendant's wages G.S. 50-16.7 and G.S. 1A-1, Rule 70.

[3] The District Court clearly had authority to order the defendant to execute an assignment of wages under G.S. 50-16.7. The only issue before us is whether the judge could *himself* execute the assignment. Under Rule 70:

> "If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the judge may direct the act to be done at the cost of the disobedient party by some other person appointed by the judge and the act when so done has like effect as if done by the party . . . ."

The defendant argues that the judge was without authority to execute an assignment of his wages for two reasons. First, defendant had not failed "to comply [with a judgment] within the time specified ..." Second, the rule authorizes the judge to "direct the act to be done ... by some other person appointed by the judge . . . ." It does not authorize the judge to act for the defendant, as was the case herein.

The second argument is the easier to deal with and will therefore be addressed first. We believe Rule 70 allows "some other person appointed by the judge" to carry out the judgment on the defendant's behalf as a convenience to the judge, to relieve the judge of the burden of acting himself. Where, as here, the judgment of the court can be fulfilled by simply executing a written authorization to defendant's employer to pay a percentage of his wages to the plaintiff, the judge may prefer to act *ex mero motu* on the defendant's behalf. Indeed the burden on the judge might be increased by involving a third party in so simple a procedure. Since the intent and effect would be the same whether the judge executed the assignment or some third person (*e.g.*, defendant's lawyer) executed it, we hold that the judge acted properly in authorizing the Rule 70 assignment *ex mero motu.*

Sturgill v. Sturgill

We note additionally that defendant failed to demonstrate how the judge's assignment, even if it were error, could have possibly prejudiced him. Had the judge appointed a third party to assign defendant's wages, the end result would have been identical. *Turner v. Turner*, 261 N.C. 472, 135 S.E. 2d 12 (1964).

The defendant's first argument is not as easily dismissed. We believe that the defendant is correct in interpreting Rule 70 to require that he first fail to comply with a judgment within the time specified before authorizing the judge to proceed thereunder. We believe further that the portion of the order of 19 December 1979 which assigned 15% of defendant's net earnings to satisfy alimony arrears of $1,305.06 was proper under Rule 70. Defendant had failed to comply with the amended consent judgment, first entered in 1971, which directed him to pay support to plaintiff. Rule 70 thus authorized the judge, upon such failure, to direct the act to be done. The judge did so direct.

The judge acted outside the authority of Rule 70, however, when he assigned 15% of defendant's net earnings in satisfaction of future alimony payments. While we agree that defendant's history of willful and intentional nonpayment of alimony was sufficient to justify the judge's entry of an order to the *defendant* to execute an assignment of wages to secure future alimony payments, G.S. 50-16.7, we believe the judge was without authority to himself execute such an assignment absent defendant's "failure to comply with the judgment within the time specified." As to future alimony payments, there was no such failure. Since the judge had entered no prior order for defendant to assign his wages to plaintiff, he cannot be said to have failed of compliance so as to necessitate the judge directing such an assignment. Further, since future payments are not yet due, defendant cannot be said to have failed to comply with the amended consent judgment.

The defendant argues that plaintiff was not entitled to attorney's fees in the amount of $1,250.00. This argument is without merit. Plaintiff alleged in her pleadings and testified at the 19 December hearing that defendant's failure to pay the full amount of his support obligation had subjected her and her daughter to financial hardship and caused her to have to borrow money for living expenses. She had already been adjudged a dependent spouse. The order of 19 December contains findings of fact and conclusions of law to this effect, concluding that plaintiff had insufficient funds

with which to defray the expenses of her action and ordering defendant to pay her attorney's fees. We hold that the trial judge's finding and conclusions were properly supported by the evidence. *See Hudson v. Hudson*, 299 N.C. 465, 263 S.E. 2d 719 (1980).

In light of our resolution of this matter, defendant's counterclaim for damages, attorney's fees, and punitive damages was properly dismissed.

Since the brief filed by Piedmont Aviation, Inc., garnishee-assignee herein, argued none of the issues properly before this Court on appeal, we do not address the point raised therein.

The portion of the 19 December 1979 order directing the Clerk of the Superior Court of Forsyth County to disburse to plaintiff the $2,438.42 then on deposit is affirmed. The portion of the said order assigning 15% of the defendant's wages under Rule 70 to satisfy alimony arrears in the sum of $1,305.06 is affirmed. The portion of the said order assigning 15% of defendant's wages for the payment of future alimony is reversed. The award of attorney's fees to plaintiff and the denial of attorney's fees, damages, and punitive damages to defendant are both affirmed.

Affirmed in part and reversed in part.

Judges WEBB and WHICHARD concur.